# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| CEDRIC JONES, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.  2:19-cv-01486-AMM-JHE |
| MOHAMMAD JENKINS, et al., | ) ) ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Cedric Jones, Jr., has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Constitution or laws of the United States.  (Doc. 1). Jones names the following defendants in the complaint: the Alabama Department of Corrections ("ADOC") and Lieutenant Mohammad Jenkins.  (Doc. 1 at 1, 2).  Jones alleges that on October 17, 2018, Jenkins used excessive force against him in violation of the Eighth Amendment.  (Doc. 1 at 4–5).  He seeks monetary relief.  (Doc. 1 at 5).

In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the court referred the complaint to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).  As explained below, the undersigned recommends the court grant in part and deny in part Jenkins' motion for summary judgment on Jones' Eighth Amendment excessive force claim.

### I. Procedural History

On February 4, 2020, the undersigned entered an Order for Special Report, directing the Clerk to forward a copy of the complaint to defendant Jenkins and directing Jenkins to file a

Special Report addressing Jones' factual allegations.[1]  (Doc. 7).  The undersigned advised Jenkins that the Special Report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the *Federal Rules of Civil Procedure*.  (Doc. 7 at 3, 6).

On January 27, 2021, Jenkins filed a Special Report, supplemented by an affidavit and institutional documents.  (Doc. 21).  The undersigned notified the parties that the court would construe the Special Report as a motion for summary judgment and notified Jones that he had 21 days to respond to the motion for summary judgment by filing affidavits or other material.  (Doc. 24).  The undersigned also advised Jones of the consequences of any default or failure to comply with Fed. R. Civ. P. 56.  (Doc. 24).  *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  On March 29, 2021, Jones filed a response.  (Docs. 25 & 26).  This matter is now before the court on Jenkins' motion for summary judgment and Jones' response.

## II. Standard of Review

Because the court has construed Jenkins' Special Report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion.  Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Chapman v. AI Transport,* 229 F.3d 1012, 1023

---

[1] Although Jones named the ADOC as a defendant, the Eleventh Amendment to the U.S. Constitution bars § 1983 claims against the state and its agencies.  *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978).  The undersigned noted in the Order for Special Report that he would recommend dismissal of Jones' claims against the ADOC at a later date.  (Doc. 7 at 2 n.1).  Consequently, the undersigned ordered only Jenkins to respond to the Order for Special Report.  (Doc. 7 at 2).

(11th Cir. 2000).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment.  *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).  Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed.  *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

### III. Summary Judgment Facts[2]

On October 17, 2018, about 3:45 a.m., Lieutenant Jenkins, Sergeant Randy Fraiser, and Correctional Officer Quinton Jackson conducted a search of Jones' cell, which he shared with inmate Devonte Collins. (Doc. 21-1 at 1). Jenkins conducted a partial search of the cell before he instructed Sergeant Fraiser to handcuff Jones. (Doc. 25, Jones Aff. at 1). Jenkins found loose foil from a carton of cigarettes and claimed the foil contained "Flakka," an illegal substance. (Doc. 25, Jones Aff. at 1). Jones and Jenkins "exchanged heated words." (Doc. 25, Jones Aff. at 1). Thereafter, Fraiser escorted Jones to the west barbershop. (Doc. 25, Jones Aff. at 1). About 15 minutes later, Jenkins arrived at the west barbershop and asked Jones for the passcode to a cellphone he found in Jones' cell. (Doc. 25, Jones Aff. at 1; Doc. 26 at 2–3). Jenkins also accused Jones of possessing drugs, which Jones denied. (Doc. 26 at 2–3).

Jones was still handcuffed to the rear when Jenkins escorted him out of the barbershop. (Doc. 25, Jones Aff. at 1; Doc. 26 at 3). Jenkins sprayed Jones with "an entire can" of chemical spray before he punched Jones several times on the right side of his face and in his right eye.[3] (Doc. 25, Jones Aff. at 1). Jenkins then "slung" Jones to the floor and continued punching him. (Doc. 25, Jones Aff. at 1). Jones contends he counted the number of times Jenkins punched him and when Jenkins punched him the 14th time, Jones informed Jenkins that he had served 14 years in prison and no correctional officer had ever used excessive force against him. (Doc. 25, Jones

---

[2] Based on the foregoing summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to the non-moving party. Factual disputes are addressed in footnote form.

[3] Jones has a prosthetic right eye for which he receives routine care. (Doc. 21-2 at 13–14, 26, 30, 35, 38, 43; Doc. 21-3 at 2, 9; Doc. 21-4 at 4–10).

Aff. at 1). Jones asserts that Jenkins continued to punch him 11 more times.[4] (Doc. 25, Jones Aff. at 1).

Thereafter, Sergeant Fraiser took Jones to the healthcare unit. (Doc. 25, Jones Aff. at 1). Jones alleges that about 20 minutes later, Jenkins told him he should have killed him.[5] (Doc. 25, Jones Aff. at 1–2).

A nurse evaluated Jones in the healthcare unit and noted redness and swelling to the right side of his face. (Doc. 21-1 at 4). The nurse also noted redness around his neck and left eye.[6] (Doc. 21-1 at 4).

On the same day, Jenkins charged Jones with possession of contraband; unauthorized possession of a weapon or device that could be used as a weapon; unauthorized possession of a phone/accessory; and failure to obey a direct order of an ADOC employee. (Doc. 21-1 at 18, 25, 32, 39). The hearing officer later found Jones guilty of the charges and recommended sanctions. (Doc. 21-1 at 22–23, 29–30, 36–37, 43–44). Warden Errol Pickens disapproved the disciplinary on the charge of possession of contraband, (Doc. 21-1 at 22–23), but approved the remaining

---

[4] According to the incident report, Jenkins and Frasier conducted a search of Jones' cell on October 17, 2018, about 3:45 a.m. (Doc. 21-1 at 1). Jones became "non-compliant" with the cell search and "gave some resistance," which required Jenkins to subdue him with chemical spray. (Doc. 21-1 at 1). The incident report further indicates that during the search, Jenkins found a cell phone, earplugs, one inmate made knife, and a silver sheet of paper believed to contain an illegal substance on Jones' bed. (Doc. 21-1 at 1). The incident report states that five minutes after Jenkins and Frasier entered Jones' cell, Jenkins escorted Jones to the healthcare unit at 3:50 a.m. for decontamination and medical evaluation. (Doc. 21-1 at 1).

[5] Jenkins does not attest to any of the alleged facts in the incident report but avers he did not punch Jones in the facial area "on October 18, 2018." (Doc. 21-6, Jenkins Aff.). Because the institutional documents indicate the incident took place on October 17, 2018, (Doc. 21-1 at 1–2, 4), the undersigned will assume Jenkins denies assaulting Jones on October 17, 2018. (Doc. 21-6, Jenkins Aff.).

[6] Prison staff took pictures of Jones while he was in the healthcare unit. (Doc. 21-1 at 5–16; Doc. 25, Jones Aff. at 1).

5

disciplinaries, except that he reduced the recommended sanctions on the charge of unauthorized possession of a phone/accessory.  (Doc. 21-1 at 29–30, 36–37, 43–44).

On October 19, 2018, Jones submitted a sick call request wherein he complained that his "whole eye and brain hurt[] on the right side of [his] face."  (Doc. 21-3 at 27).  On the same day, medical staff evaluated Jones for his complaints of throbbing pain on the right side of his face.  (Doc. 21-3 at 26).  Jones stated his pain level was a ten on a scale of one to ten and medical staff observed that his right eye was bruised.  (Doc. 21-3 at 26).  Medical staff prescribed Tylenol to Jones.  (Doc. 21-3 at 1).

On November 1, 2018, Jones submitted a sick call request wherein he complained Tylenol provided only temporary relief from the "throbbing and aching of [his] bruised eye socket."  (Doc. 21-3 at 22).  He requested to speak to a physician because he was still in pain.  (Doc. 21-3 at 22).  On the same day, medical staff evaluated Jones for his complaints and later prescribed more Tylenol.  (Doc. 21-2 at 46; Doc. 21-3 at 21).

On or about November 18, 2018, Jones submitted a sick call request wherein he complained of eye pain and claimed his eye was "dried out [and] leaking mucus."  (Doc. 21-3 at 16).  Medical staff evaluated Jones and prescribed ointment for his eye.  (Doc. 21-3 at 15).

Jones contends he suffered "severe pain" and "drainage" from his eye for over a month due to Jenkins' use of excessive force.  (Doc. 1 at 5).  For relief, he seeks $30,000.00 for "mental and physical pain and suffering."  (Doc. 1 at 5).

## IV. Analysis

### A. Alabama Department of Corrections

Jones' claims against the ADOC are due to be dismissed.  The Eleventh Amendment to the United States Constitution bars § 1983 claims in federal court against the state or its agencies.  *See*

*Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984).   The Supreme Court has noted:

> There can be no doubt . . . that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit.  Respondents do not contend that Alabama has consented to this suit, and it appears that no consent could be given under Art. I, § 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity."

*Alabama v. Pugh*, 438 U.S. at 782 (citations omitted).  Accordingly, Jones cannot maintain a § 1983 action against the ADOC and his claims against the Department are due to be dismissed.

### B. Excessive Force

Jones alleges that on October 17, 2018, Jenkins sprayed "an entire can" of chemical spray on him before punching him in the face and eye 25 times while he was handcuffed to the rear. (Doc. 1 at 5; Doc. 25, Jones Aff. at 1).  Jenkins' motion for summary judgment on Jones' Eighth Amendment excessive force claim is due to be granted in part and denied in part, as explained below.

### 1. Official Capacity

Jenkins is entitled to summary judgment to the extent Jones' excessive force claim is brought against him in his official capacity for monetary damages.  Not only does the Eleventh Amendment bar § 1983 claims against the state or an agency of the state, it also bars § 1983 claims for monetary damages brought against officials and employees of state entities sued in their official capacities.  *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 101–02.  Accordingly, Jenkins' motion for summary judgment is due to be granted on Jones' claim against him in his official capacity for damages.  The remainder of this report and recommendation will address Jones' excessive force claim against Jenkins in his individual capacity.

**2. Individual Capacity**

Jones' excessive force allegations against Jenkins are analyzed under the standard set forth by the U.S. Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992) and *Whitley v. Albers*, 475 U.S. 312 (1986). *See Campbell v. Sikes*, 169 F.3d 1353, 1374–75 (11th Cir. 1999). In *Hudson*, the Supreme Court held that in assessing an inmate's excessive force claim, "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 6 (citations omitted).

With these concerns in mind, the Supreme Court set out certain factors that should be considered when examining whether a use of force was excessive. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Whitley*, 475 U.S. at 321. In applying these factors to the facts of a particular case, the Supreme Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de*

8

*minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9–10 (citations omitted).  Thus, to create a genuine issue of material fact, a plaintiff must present evidence from which a reasonable inference can be drawn that the defendant acted maliciously and sadistically.

On October 17, 2018, Jenkins and Fraiser conducted a search of Jones cell. (Doc. 21-1 at 1; Doc. 25, Jones Aff. at 1).  Jones contends that after Fraiser handcuffed him, Jenkins accused him of possessing "Flakka," an illegal substance, and the two "exchanged heated words." (Doc. 25, Jones Aff. at 1).  Thereafter, Fraiser escorted Jones to the west barbershop. (Doc. 25, Jones Aff. at 1).  Jones alleges Jenkins later arrived at the barbershop and escorted Jones into the hallway where he sprayed him with an "entire can" of chemical spray and punched him 25 times in his face and eye. (Doc. 1 at 5; Doc. 25, Jones Aff. at 1; Doc. 26 at 2–3).  Jones avers he was handcuffed behind his back during the alleged assault. (Doc. 25, Jones Aff. at 1; Doc. 26 at 2–3).  He asserts that he suffered severe pain and drainage from his eye for over a month. (Doc. 1 at 5).

Construing the facts in the light most favorable to Jones, Jenkins intentionally and maliciously harmed Jones by spraying him with an excessive amount of chemical spray and punching him in his face and eye 25 times.  Moreover, no force was needed because Jones was handcuffed behind his back and not posing a threat to Jenkins.

On the other hand, Jenkins denies he assaulted Jones on October 17, 2018, by punching him in the facial area. (Doc. 21-6, Jenkins Aff. at 1).  The incident report indicates Jenkins sprayed Jones with chemical spray in his cell because he was non-compliant during the cell search and "gave some resistance." (Doc. 21-1 at 1).  But Jenkins does not mention his use of chemical spray on Jones in his affidavit. (Doc. 21-6, Jenkins Aff.).  Furthermore, the alleged incident Jones

9

complains of occurred after he had been escorted to the west barbershop and appears to be separate from any events that occurred in his cell.  (Doc. 1 at 4; Doc. 25, Jones Aff. at 1; Doc. 26 at 2–3).

It is well established that assessing the credibility of the allegations made by a plaintiff or a defendant is beyond the scope of a trial court's ruling on a motion for summary judgment.  *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also, Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742–43 (11th Cir. 1996).  The facts presented by the parties show that a genuine dispute exists between Jones' and Jenkins' version of the facts in connection with the events that took place on October 17, 2018, and whether Jenkins used excessive force against Jones after escorting him to the barbershop.  Therefore, defendant Jenkins' motion for summary judgment on Jones' excessive force claim is due to be denied.

Jenkins asserts in his brief that Jones suffered only minimal injury related to the use of chemical spray.[7]  (Doc. 21 at 7).  Jenkins also contends the pictures taken of Jones in the healthcare unit support his assertion that he did not hit Jones in the face 25 times.  (Doc. 21 at 4).

Jones' body chart indicates he suffered redness and swelling to his neck and the right side of his face and his left eye was red.  (Doc. 21-1 at 4).  Jones maintains he endured severe pain and drainage from his right eye for over a month because of Jenkins' alleged use of excessive force.  (Doc. 1 at 5).  One picture of Jones taken after the incident shows what appears to be bruising on the right side of his face (Doc. 21-1 at 14), but other pictures do not definitively indicate other injuries, if any.  (Doc. 21-1 at 5–16).

---

[7] Again, because Jones alleges Jenkins used "an entire can" of chemical spray on him after Jenkins escorted him from the west barbershop (Doc. 25, Jones Aff. at 1), it does not appear that Jenkins' use of chemical spray on Jones in his cell—the only incident referenced in the incident report—is the incident Jones challenges.  (Doc. 21-1 at 1).

The extent of injury is but one factor in determining whether an inmate was subjected to excessive force. In *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010), the Supreme Court clarified that the purpose of *Hudson* was to "shift the 'core judicial inquiry' from the extent of the injury to the nature of the force—specifically, whether [the force] was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" (quoting *Hudson*, 503 U.S. at 7). In the context of an Eighth Amendment excessive force claim, the Supreme Court has recognized that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38. If Jenkins sprayed Jones with an excessive amount of chemical spray and punched him in the face 25 times while he was restrained and not creating a disturbance or causing a threat to Jenkins or other correctional staff, Jenkins' conduct would exceed a *de minimis* use of force and would rise to the level of force used maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 6–7.

Moreover, a plaintiff claiming violation of his constitutional rights may recover nominal damages even if he suffered no compensable injury. *See Brooks v. Warden*, 800 F.3d 1295, 1308 (11th Cir. 2015); *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003) ("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages."). Additionally, the Eleventh Circuit held recently that 42 U.S.C. § 1997e(e) does not bar a prisoner from recovering punitive damages for mental or emotional injury in the absence of physical injury.[8] *See Hoever v.*

---

[8] Title 42 U.S.C. § 1997e(e) states:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

*Marks*, 993 F.3d 1353, 1362 (11th Cir. 2021) ("[A] plaintiff—at least one alleging a constitutional violation—need not allege a compensable injury to seek punitive damages, so long as he plausibly alleges that the underlying misconduct was willful or malicious."). Thus, Jones' excessive force claim against Jenkins is not subject to dismissal even if Jones suffered only minimal injury or no injury at all.

### C. Qualified Immunity

Jenkins also contends he is entitled to qualified immunity regarding Jones' excessive force claim. (Doc. 21 at 5–8). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation marks and citations omitted).

To obtain qualified immunity, the government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation marks and citations omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity in not appropriate." *Id*. The plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (footnote omitted).

There is no dispute that Jenkins was acting within the scope of his discretionary authority when he allegedly used excessive force against Jones on October 17, 2018. Because there is a question of fact concerning whether Jenkins used excessive force, he is not entitled to qualified immunity. Specifically,

> a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution . . . . There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. The only question, then, is whether the plaintiff has alleged facts sufficient to survive a . . . motion for summary judgment. If he has done so, that is the end of the inquiry.

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citations omitted).

Because Jones has alleged facts sufficient to survive a motion for summary judgment concerning his Eighth Amendment excessive force claim, Jenkins' motion for summary judgment based on qualified immunity is due to be denied.

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the court **DISMISS WITH PREJUDICE** Jones' claims against the ADOC under Eleventh Amendment immunity. The undersigned **FURTHER RECOMMENDS** the court **GRANT** Jenkins' motion for summary judgment on Jones' Eighth Amendment excessive force claim against him in his official capacity for monetary damages and **DISMISS** the claim **WITH PREJUDICE**. Lastly, the undersigned **RECOMMENDS** the court **DENY** Jenkins' motion for summary judgment on Jones' excessive force claim against Jenkins in his individual capacity.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within 14 calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present

13

additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

DONE this 5th day of January, 2022.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE